UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**WILLIAM HILL**,

    Plaintiff,

v.

**READY RIDE MICHIGAN, LLC,**

    Defendant.

Case No.
Hon.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pwky, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in the Compliant.

Plaintiff, William Hill, by and through his attorneys, Croson, Taub, & Michaels, PLLC, hereby alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. This is an action for disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, discrimination and retaliation in violation of the Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL § 37.1101, *et seq.*; MCL § 37.1602, and interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

2. Plaintiff, William Hill, is an individual residing in Lansing, Michigan in Ingham County and is a citizen of the State of Michigan.

3. Defendant, Ready Ride Michigan, LLC, is a domestic limited liability company, formed under the laws of the State of Michigan. Defendant does business in the State of Michigan with a registered resident agent in Lansing, Michigan in Ingham County.

4. At all times relevant hereto, Plaintiff performed work for Defendant out of its location in Lansing, Michigan in the Western District of Michigan.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

6. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims. The pendant claims are part of the same case or controversy. They do not substantially predominate. They do not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

7. Venue is proper in this Court because Defendant obligated itself to Plaintiff within the Western District of Michigan, Defendant employed Plaintiff within the Western District of Michigan, and the actions giving rise to this lawsuit occurred within the Western District of Michigan.

8. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of his disability.

9. Plaintiff's charge was filed within 300 days of the commission of the unlawful employment practices alleged in this claim.

10. Plaintiff received his notice of right to sue, and he has filed this complaint within ninety (90) days of receiving his notice of rights.

## STATEMENT OF FACTS

11. Plaintiff began working for Defendant on or about January 21, 2019 as a Driver.

12.     As a Driver, Plaintiff was expected to provide non-emergency transportation for individuals who needed rides to medical appointments. To accomplish this, he drove a van.

13.     Initially, Plaintiff worked a schedule of 7 am to 11 pm Monday through Friday. While Plaintiff would not necessarily work during the entirety of that schedule, Defendant could assign him routes at any point during his schedule.

14.     Defendant assigned routes the day before Plaintiff's shift.

15.     At all times relevant hereto, Plaintiff performed his job diligently and competently and was well-qualified for the position he held.

16.     Plaintiff suffers from sciatica, diabetes, kidney failure, auto-immune disorder, glaucoma, and leg and back pain.

17.     These disorders limit Plaintiff's ability to work and engage in the activities of daily life due to persistent fatigue, weakness, and pain.

18.     Plaintiff informed Defendant about his disabilities.

19.     For most of Plaintiff's employment, he was able to perform the essential functions of his job without accommodation.

20.     However, from approximately May 21, 2021 through May 31, 2021, Plaintiff required a medical leave of absence due to his multiple disabilities.

21.     Defendant granted Plaintiff this leave of absence.

22.     When Plaintiff returned to work, he requested an additional reasonable accommodation of modifying his work schedule to starting at 7:30 am until 5 pm (Monday through Friday) and no work on Saturdays or Sundays.

23.     Defendant granted Plaintiff his request for a modified schedule but denied his request to limit work to five days per week.

24. Defendant did not otherwise engage in the interactive process regarding this reasonable accommodation request.

25. On or about August 30, 2021, Plaintiff saw his doctor who wrote him a note limiting him to five days of work per week due to his medical issues.

26. Upon receiving the note, per company practice, Plaintiff faxed the note to Defendant's dispatcher who confirmed its receipt.

27. Nonetheless, Defendant scheduled Plaintiff to work on Saturday, September 11, 2021.

28. On September 10, 2021, Plaintiff received his route assignments for September 11th, and Defendant informed Plaintiff that he had no trips scheduled for September 12th or 13th.

29. Prior to the beginning of his shift on September 11th, Plaintiff emailed Defendant's dispatcher that he was not feeling well that day and would not be in.

30. Plaintiff then sought medical treatment at urgent care for which he received a doctor's note, releasing him back to work on September 13, 2021.

31. On September 13, 2021, Defendant terminated Plaintiff's employment.

32. Defendant claimed it was terminating Plaintiff because it could not count on Plaintiff, and he did not have the ability to perform his driver's responsibilities.

33. Defendant also later claimed to the Michigan Unemployment Insurance Agency and the EEOC that Plaintiff was no call-no show for three days, which Defendant considers a resignation.

34. Defendant's proffered reason for termination was false. Plaintiff had been a reliable employee who had the ability to perform his driver's responsibilities with a reasonable accommodation and/or a reduced leave schedule under the FMLA.

35. Furthermore, Plaintiff never went three or more days without communicating with Defendant, he was never no call-no show, and he never resigned his position.

36. Granting Plaintiff a reasonable accommodation of limiting his schedule to five days a week would not have been an undue hardship for Defendant.

37. Defendant never claimed undue hardship in relation to any of Plaintiff's requests for reasonable accommodation.

38. As described above, Defendant failed to provide Plaintiff with reasonable accommodations and failed to engage in the interactive process.

39. Defendant never notified Plaintiff of his eligibility for FMLA leave or his right to medical leave and/or a reduced leave schedule under the Act.

40. Defendant terminated Plaintiff because of his disabilities.

41. Defendant terminated Plaintiff in retaliation for requesting reasonable accommodations and exercising the reasonable accommodation of a modified schedule.

42. Defendant interfered with Plaintiff's right to take leave pursuant to the FMLA and retaliated against Plaintiff for his exercise of such leave.

43. Any other reason for Plaintiff's termination is merely pretextual.

44. On information and belief, Defendant replaced Plaintiff with a non-disabled employee.

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE ADA

45. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

46. At all times relevant hereto, Plaintiff was an employee and Defendant was an employer as defined by the Americans with Disabilities Act.

47. Plaintiff has a disability as defined by the Americans with Disabilities Act, to-wit:

    a. a physical impairment, which substantially limits one or more of his major life activities, including, but not limited to, his ability to work and engage in the daily activities of life; and/or

    b. a record of such physical impairment.

48. Plaintiff is a qualified individual with a disability as defined by the ADA, to-wit: Plaintiff, with or without reasonable accommodation, is able to perform the essential functions of his employment duties with Defendant.

49. Defendant perceived and/or regarded Plaintiff as having a disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

50. Plaintiff was entitled to and requested a reasonable accommodation (i.e. medical leave and/or a modified work schedule), which Defendant denied expressly and by terminating Plaintiff instead of allowing him to return to work.

51. Plaintiff was well-qualified and able to perform the essential functions of his duties with or without the requested accommodation, but Defendant instead terminated Plaintiff's employment.

52. Defendant discriminated against Plaintiff on account of his real and perceived disabilities in violation of the ADA, 42 U.S.C. § 12112, by and through its agents, servants, and/or employees, by acts including, but not limited to terminating Plaintiff's employment and denying him a reasonable accommodation.

53. Defendant's actions in violation of the ADA were willful.

54. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

55. Plaintiff's disabilities were the motivating and/or but for cause of Defendant's actions in violation of the ADA.

56. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

57. As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE PWDCRA

58. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

59. At all times relevant hereto, Plaintiff was an employee and Defendant was an employer as defined by Michigan's Persons with Disabilities Civil Rights Act.

60. Plaintiff has a disability as defined by the PWDCRA, to-wit:

   a. a determinable physical characteristic which may result from disease, injury, congenital condition of birth, or functional disorder, to wit: sciatica, diabetes, kidney failure, auto-immune disorder, glaucoma, and leg and back pain;

   b. which substantially limits one or more of his major life activities, including, but not limited to: her ability to work and engage in the daily activities of life;

   c. which is unrelated to Plaintiff's ability to perform the duties of his job or position, to-wit: with or without an accommodation, Plaintiff's disability does not prevent him from performing the duties of his job or position; and/or

   d. a record of such determinable physical characteristic.

61. Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL § 37.1103(d)(ii).

62. Defendant discriminated against Plaintiff on account of his real and perceived disability in violation of PWDCRA, MCL § 37.1102(1), by acts including, but not limited to: failing to provide Plaintiff with reasonable accommodation for his disability and/or terminating Plaintiff.

63. Defendant's actions in violation of the PWDCRA were willful.

64. Plaintiff's disabilities were the motivating and/or but for cause of Defendant's actions in violation of the PWDCRA.

65. As a direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has suffered depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

66. As a further direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT III**
**RETALIATION IN VIOLATION OF THE PWDCRA**

67. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

68. As stated above, Plaintiff was an employee and Defendant was an employer as defined by Michigan's Persons with Disabilities Civil Rights Act.

69. Plaintiff has a disability as defined by Michigan's Persons with Disabilities Civil Rights Act.

70. Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL § 37.1103(d)(ii).

71. Defendant retaliated against Plaintiff for his requests for a reasonable accommodation and exercise of medical leave in violation of the PWDCRA, MCL § 37.1602, by and through its agents, servants, and/or employees, by acts including, but not limited to denying Plaintiff reinstatement from medical leave and terminating Plaintiff's employment.

72. Defendant's actions in violation of the PWDCRA were willful.

73. Plaintiff's requests for a reasonable accommodation and/or his exercise of medical leave were the motivating and/or but for cause of Defendant's actions in violation of the PWDCRA.

74. As a direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

75. As a further direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT IV
## INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

76. Plaintiff incorporates here all previously stated allegations.

77. Plaintiff was an "eligible employee" as defined by the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2)(a):

　　a. Plaintiff worked for Defendant for more than one year; and

   b. Plaintiff worked in excess of 1,250 hours for the proceeding 12 month period at all relevant times.

  78. Defendant is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(a), as an entity or person engaged in commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

  79. Plaintiff was entitled to leave as an eligible employee who had a serious health condition that made him unable to perform the functions of his position.

  80. Plaintiff had a serious health condition as defined by federal regulations to the FMLA, 29 C.F.R. § 825.115(a):

   a. He suffered a period of incapacity of more than three consecutive, full calendar days; and

   b. He had subsequent periods of incapacity relating to the same condition that also involved two or more times of in-person treatment within thirty days of incapacity or treatment by a health care provider in-person resulting in a regimen of continued treatment.

  81. Plaintiff's condition caused incapacity in that he was medically unable to perform his work.

  82. Plaintiff received medical treatment in the form of prescription treatment, prescription medication, and follow-up medical appointments for his condition.

  83. Plaintiff also suffered from chronic conditions for which he required to receive periodic treatment by a health care provider over an extended period of time that may cause episodic rather than a continuing period of incapacity.

  84. Under regulations regarding the FMLA:

> When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances. . . . Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period. . . . All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12-month period.

*Id.* at § 825.300(b)(1). This eligibility notice must include a statement of whether the employee is eligible for the FMLA, and if the employer states that the employee is not eligible FMLA leave, it must provide at least one reason why. *Id.* at § 825.300(b)(2).

85. Defendant never provided any eligibility notice to Plaintiff as required by regulations to the FMLA.

86. Defendant failed to provide Plaintiff any other notice of his rights under the FMLA even though Plaintiff gave notice that he had or may have had a serious health condition.

87. Defendant was aware of its duties under the FMLA but willfully violated the FMLA.

88. Defendant's failure to follow the notice requirements set forth in the federal regulations constituted an interference with, restraint, or denial of the exercise of Plaintiff's FMLA rights.

89. Even after Plaintiff made Defendant aware that he had or may have had a serious health condition that required leave and/or a reduced leave schedule to treat the condition, Defendant interfered with Plaintiff's right to FMLA leave by denying him leave and/or a reduced leave schedule and terminating his employment for exercising leave.

90. As such, Defendant's willful actions interfered with Plaintiff's right to FMLA leave as prohibited by the FMLA. 29 U.S.C. § 2615(a)(1).

91. As a direct and proximate result of Defendant's violation of the FMLA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

92. As a further direct and proximate result of Defendant's violation of the FMLA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT V
## RETALIATION IN VIOLATION OF
## THE FAMILY AND MEDICAL LEAVE ACT

93. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

94. As set forth above, Plaintiff was an "eligible employee" as defined by the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2)(a):

95. Defendant is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(a), as an entity or person engaged in commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

96. Plaintiff was entitled to leave as an eligible employee who had a serious health condition that made him unable to perform assigned duties of his position.

97. Plaintiff had a serious health condition as defined by federal regulations to the FMLA, 29 C.F.R. § 825.102.

98. Plaintiff requested medical leave and/or a reduced leave schedule as required by his doctor and provided medical documentation stating the restriction to Defendant as soon as practicable.

99. Plaintiff engaged in protected activity under the FMLA by, *inter alia*, exercising medical leave when he refused to work in violation of his doctor's orders.

100. Defendant subsequently retaliated against Plaintiff because of his protected activity by, *inter alia*, terminating Plaintiff's employment.

101. Defendant was motivated by Plaintiff's protected activity when it decided to terminate his employment.

102. But for Plaintiff's protected activity, Defendant would not have terminated his employment.

103. Terminating Plaintiff's employment for seeking and taking protected medical leave was retaliatory and a violation of the FMLA. 29 U.S.C. § 2615(a)(2).

104. Defendant's actions in violation of the FMLA were willful.

105. As a direct and proximate result of Defendant's violation of the FMLA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

106. As a further direct and proximate result of Defendant's violation of the FMLA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

# **RELIEF REQUESTED**

WHEREFORE, Plaintiff, **WILLIAM HILL**, requests that this Court enter the following relief:

a. Declare the practices and actions of Defendant as unlawful employment practices in violation of the ADA, PWDCRA, and FMLA;

b. Compensatory damages for monetary and non-monetary loss in whatever amount he is found to be entitled;

c. Exemplary damages in whatever amount he is found to be entitled;

d. Punitive damages in whatever amount he is found to be entitled;

e. Liquidated damages in an amount equal to his lost wages and benefits;

f. A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled;

g. An order of this Court reinstating Plaintiff to the position he would have if there had been no wrongdoing by Defendant;

h. An injunction of this Court prohibiting any further acts of discrimination or retaliation by Defendant;

i. An award of interest, costs, and reasonable attorney fees; and

j. Whatever other equitable relief this Court finds appropriate.

Respectfully Submitted,
CROSON, TAUB, & MICHAELS, PLLC


/s/ Adam M. Taub
Adam M. Taub (P78334)
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

Dated: October 9, 2023

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**WILLIAM HILL**,

        Plaintiff,

v.

**READY RIDE MICHIGAN, LLC,**

        Defendant.

Case No.
Hon.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pwky, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## **DEMAND FOR TRIAL BY JURY**

    **NOW COMES** Plaintiff, **WILLIAM HILL**, by and through her attorneys, **CROSON, TAUB, & MICHAELS, PLLC**, and hereby demands a trial by jury, for all issues so triable.

    Respectfully Submitted,
    CROSON, TAUB, & MICHAELS, PLLC

    /s/ Adam M. Taub
    Adam M. Taub (P78334)
    Attorney for Plaintiff
    455 E. Eisenhower Pkwy, Suite 75
    Ann Arbor, MI 48108
    (734) 519-0872
    ataub@ctmlawyers.com

Dated: October 9, 2023